UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

TIMOTHY EUGENE ESTEP,

  Petitioner,

v.

KEITH YORDY, Warden,

  Respondent.

Case No. 1:15-cv-00530-CWD

**MEMORANDUM DECISION
AND ORDER**

     Petitioner Timothy Eugene Estep filed a Petition for Writ of Habeas Corpus challenging his state court felony conviction and sentence. (Dkt. 3.) Respondent Keith Yordy filed an Answer and Brief in Support of Dismissal (Dkt. 11), and Petitioner filed a Reply. (Dkt. 17.) All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 10.) The Court has reviewed and takes judicial notice of the state court record lodged by the parties. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having considered the parties' arguments contained in the briefing, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

This case arises from criminal proceedings in the First Judicial District Court in Kootenai County, Idaho. The Idaho Court of Appeals described the following relevant facts:

> In 2006, Estep was charged with lewd conduct with a minor under sixteen for inappropriately touching a developmentally disabled twelve-year-old girl. Estep ultimately pled guilty to felony injury to a child and was sentenced in 2008 to a unified term of six years, with a minimum period of confinement of two years. This sentence was suspended, however, and Estep was placed on probation for five years.

> During his probation, Estep [then 53 years old] met and befriended the 18-year-old victim in th[is] case. On August 3, 2010, Estep invited the victim to go swimming with him and a few others, during which time Estep provided the victim with alcohol. The victim eventually became intoxicated and sick. Estep drove the victim to his home, bathed her, and had sexual intercourse with her while she lay unconscious in his bed. The victim awoke during the rape, but pretended to be asleep. After Estep finished, the victim got up, put on some clothing, and ran from the residence. Estep followed her and tried to persuade her to get in his vehicle. After she refused, he threw some of her clothing at her and drove away. The victim contacted police and was taken to a hospital for a rape examination. Police interviewed Estep at his home and later the police station. Estep made several inconsistent and incriminating statements, but denied having sex with the victim. He eventually admitted that he had sex with the victim, although he contended that it occurred while she was vomiting into a toilet because she could not protest.

> Estep was charged with rape, I.C. § 18-6101, and with dispensing alcohol to a minor, I.C. § 23-603. During a pretrial process that took over two years, Estep requested to represent himself several times. Judge Benjamin

**MEMORANDUM DECISION AND ORDER - 2**

R. Simpson denied each request after finding that Estep was not competent to represent himself.

(State's Lodging B-4, pp.1-2.)

At Petitioner's request and against the advice of counsel and the admonition of the trial court, Petitioner was tried in abstentia. The jury found Petitioner guilty of both counts. The trial court sentenced Petitioner to time served for dispensing alcohol to a minor and to a fixed life term of imprisonment for rape. The judgment of conviction was entered on December 12, 2012.

Petitioner filed an appeal, asserting that the trial court denied him his Sixth Amendment right to represent himself at trial and abused its discretion in sentencing him to a fixed life term for rape. The Idaho Court of Appeals rejected his claims, and the Idaho Supreme Court denied his petition for review. The appeal concluded on December 29, 2014. Petitioner did not file a post-conviction petition. Petitioner brings two claims in his federal Petition for Writ of Habeas Corpus.

## PRELIMINARY MOTIONS

### 1.    Petitioner's Motion for Evidentiary Hearing (Dkt. 16)

Petitioner asserts that an evidentiary hearing is necessary to "allow for an objective view of the court records, as it pertains to [his] ability to present [his] case," and because it would "allow [him] to properly prepare [his] reply and rebuttal (traverse)."

**MEMORANDUM DECISION AND ORDER - 3**

(Dkt. 16, p. 2.) He provides the following examples of the State's evidence that he desires to rebut at a hearing: (1) a death threat he allegedly made against Judge Simpson (who recused himself prior to trial); (2) an alleged confession of prior incidents; (3) a psychological evaluation dated November 2010; (4) a quote made by Petitioner taken out of context ("I believe abstentia would be best for me; I can't always be in control of my behavior."); and (5) a letter from Linda C. Hill. Petitioner argues that an evidentiary hearing is warranted because "some or all of the examples may be considered extrinsic evidence under 2254(d)(2) or 2254(e)(1)." (*Id.*, p. 3.)

Generally, the merits of the claims in a federal habeas corpus petition are decided on the record that was before the state trial and appellate courts. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). If a petitioner desires to bring new evidence on federal habeas review that has not been presented to the state courts, *and* he failed to develop the factual basis of the claims in state court because of "lack of diligence or some greater fault, attributable to" him or his counsel, then he must meet the requirements of § 2254(e)(2). *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

In *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), the Ninth Circuit determined that state court findings of fact would proceed first to an "intrinsic" review, and then to an "extrinsic review," allowing the petitioner to bring new evidence in support of a claim decided by the state courts on the merits. The Ninth Circuit reasoned

**MEMORANDUM DECISION AND ORDER - 4**

that "the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." *Id*. However, in *Cullen v. Pinholster*, the United States Supreme Court held that new evidence introduced in federal court "has no bearing" on a merits review of a state court's legal conclusions; therefore, a petitioner cannot receive a federal evidentiary hearing on the merits of any claims that the state court has addressed unless the factual findings of the state court are unreasonable. 563 U.S. at 185. As the Ninth Circuit explained in *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014), *Pinholster* "eliminated the relevance of 'extrinsic' challenges when … reviewing state-court decisions under AEDPA." *Id*. at 999.

The Court has determined that it will decide Petitioner's two claims on the merits. The first claim of denial of the right to self-representation was addressed by the Idaho Supreme Court on the merits, while the second one, an unconstitutionally excessive sentence, is procedurally defaulted but needs no further factual development to be denied on the merits. In addition, the evidence Petitioner desires to present has no bearing on the excessive sentence claim.

Reviewing the state court record in this matter, the Court finds that Petitioner has not sufficiently shown that he and his counsel are not at fault for failing to develop the

**MEMORANDUM DECISION AND ORDER - 5**

facts that he desires to bring forward here. For example, Petitioner has no argument that the state courts improperly denied him the opportunity to develop and present evidence in support of his claims in state court, because he presented his claims on direct appeal, where there was no possibility of developing any further evidence in support of the claims. He did not file a post-conviction action, which is the state court mechanism set aside for claims that need additional factual development.

Because he was less than diligent in state court, he must meet § 2254(e)(2) to warrant an evidentiary hearing in this action. Section 2254(e)(2) requires that a petitioner show his claims are based either on a new retroactive rule of constitutional law *or* on a factual predicate that could not have been previously discovered through the exercise of due diligence, and that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *See* § 2254(e)(2)(A)&(B).

Petitioner has failed to show how he could not have discovered the factual predicate of his claims during his state court action. As soon as his request for self-representation was denied, he knew the facts upon which the state court made its decision. Because Petitioner has not made a sufficient showing to meet § 2254(e)(2), the Motion for an Evidentiary Hearing will be denied.

**MEMORANDUM DECISION AND ORDER - 6**

2.      **Petitioner's Motion for a Rule 35 Mental Examination (Dkt. 20)**

Petitioner filed a motion seeking a mental examination in this action, pursuant to Federal Rule of Civil Procedure 35(a)(1), which provides that the Court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination." Petitioner's current mental condition is not at issue in this federal habeas corpus case, and he is not permitted to bring forward additional forensic evidence to supplement the record on review of the merits of his claims. Therefore, Petitioner's request will be denied.

3.      **Petitioner's Motion for Scheduling a Date for a Hearing and Review and Motion for a Judicial Status Conference**

Because a hearing on Petitioner's motions is unnecessary, the Motion to Schedule a Hearing and Motion for a Status Conference will be denied. (Dkt. 21, 27.) Petitioner's Motion for Review will be granted, to the extent that the Petition and pending motions are now ripe for adjudication, and the Court has reviewed this case, including the state court record.

## REVIEW OF PETITION

1.  **Standard of Law**

Federal habeas corpus relief may be granted where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

**MEMORANDUM DECISION AND ORDER - 7**

§ 2254(a). Where the petitioner challenges a state court judgment in which the petitioner's federal claims were adjudicated on the merits, then Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies. Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

1.   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

Where a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

**MEMORANDUM DECISION AND ORDER - 8**

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although it identified "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If fairminded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

**MEMORANDUM DECISION AND ORDER - 9**

2.      **Claim 1: Right to Self-Representation**

Petitioner alleges that the state district court violated his Sixth Amendment right to

self-representation when it denied his request to represent himself at trial. Petitioner

asserts that the trial court erred in determining that he was not competent to represent

himself.

A. *Standard of Law*

A criminal defendant has a Sixth Amendment right to waive counsel and represent

himself. *Faretta v. California*, 422 U.S. 806, 807 (1975). "The right to defend is given

directly to the accused; for it is he who suffers the consequences if the defense fails." *Id.*

at 819-20. Based on these foundational principles, the United States Supreme Court

reasoned and concluded in *Faretta*:

> When an accused manages his own defense, he relinquishes, as a
> purely factual matter, many of the traditional benefits associated with the
> right to counsel. For this reason, in order to represent himself, the accused
> must "knowingly and intelligently" forgo those relinquished benefits.
> Although a defendant need not himself have the skill and experience of a
> lawyer in order competently and intelligently to choose self-representation,
> he should be made aware of the dangers and disadvantages of
> self-representation, so that the record will establish that "he knows what he
> is doing and his choice is made with eyes open."

422 U.S. at 835 (internal citations omitted).

**MEMORANDUM DECISION AND ORDER - 10**

In *Faretta*, the Supreme Court found that the state court record showed Mr. Faretta "clearly and unequivocally declared to the trial judge that he wanted to represent himself," and that Mr. Faretta was "literate, competent, understanding, and that he was voluntarily exercising his informed free will." *Id*. at 835. The trial judge had warned Mr. Faretta that "he thought it was a mistake not to accept the assistance of counsel," and that Mr. Faretta would be "required to follow all of the 'ground rules' of trial procedure." *Id*. Finally, the Supreme Court noted that whether Mr. Faretta had an adequate technical knowledge of legal principles such as the hearsay rules or the jury selection process "was not relevant to an assessment of his knowing exercise of the right to defend himself." *Id*.

In *Patterson v. Illinois*, 487 U.S. 285, 300 (1988), the Supreme Court clarified *Faretta*'s admonition that the defendant must be made aware of and understand "the dangers and disadvantages of self-representation." The *Patterson* court advised trial courts to take a "pragmatic approach to the waiver question," based on "what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage," and to use these factors to "determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized." *Id*. at 298.

**MEMORANDUM DECISION AND ORDER - 11**

In *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004), the United States Supreme Court elaborated on the "knowing, voluntary, and intelligent" standard used for assessment of a litigant's ability to self-represent:

> We have not … prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.

At the trial stage, more rigorous warnings are necessary, because the dangers and disadvantages of self-representation are more substantial and less obvious to the accused. *Id.* at 90.

Most recently, in *Indiana v. Edwards*, 554 U.S. 164, 175-76 (2008), the Supreme Court further clarified that, even if a defendant who suffers from severe mental illness is competent enough to stand trial and assist with his own defense, "the Constitution permits a State to limit [a] defendant's self-representation right by insisting upon representation by counsel at trial—on the ground that the defendant lacks mental capacity to conduct his trial defense unless represented." *Id*. at 174.

Especially relevant here is the Supreme Court's expansion of the factors the trial court should take into consideration when determining whether a defendant should

**MEMORANDUM DECISION AND ORDER - 12**

represent himself, beyond that expressed in *Faretta* and consistent with modern mental

health care principles:

> *Faretta*, the foundational self-representation case, rested its
> conclusion in part upon pre-existing state law set forth in cases all of which
> are consistent with, and at least two of which expressly adopt, a
> competency limitation on the self-representation right. *See* 422 U.S., at 813,
> and n. 9, 95 S.Ct. 2525 (citing 16 state-court decisions and two secondary
> sources). *See, e.g., Cappetta v. State*, 204 So.2d 913, 917–918
> (Fla.App.1967), *rev'd on other grounds*, 216 So.2d 749 (Fla.1968), *cited in
> Faretta, supra*, at 813, n. 9, 95 S.Ct. 2525 (assuring a "mentally competent"
> defendant the right "to conduct his own defense" *provided that* "no unusual
> circumstances exist" such as, *e.g.*, "mental derangement" that "would ...
> depriv[e]" the defendant "of a fair trial if allowed to conduct his own
> defense," 204 So.2d, at 917–918); *id*., at 918 (noting that "whether unusual
> circumstances are evident is a matter resting in the sound discretion granted
> to the trial judge"); *Allen v. Commonwealth*, 324 Mass. 558, 562–563, 87
> N.E.2d 192, 195 (1949) (noting "the assignment of counsel" was
> "necessary" where there was some "special circumstance" such as when the
> criminal defendant was "mentally defective").

> Second, the nature of the problem before us cautions against the use
> of a single mental competency standard for deciding both (1) whether a
> defendant who is represented by counsel can proceed to trial and (2)
> whether a defendant who goes to trial must be permitted to represent
> himself. Mental illness itself is not a unitary concept. It varies in degree. It
> can vary over time. It interferes with an individual's functioning at different
> times in different ways. The history of this case (set forth in Part I, *supra*)
> illustrates the complexity of the problem. In certain instances an individual
> may well be able to satisfy *Dusky*'s mental competence standard, for he
> will be able to work with counsel at trial, yet at the same time he may be
> unable to carry out the basic tasks needed to present his own defense
> without the help of counsel. *See, e.g.,* N. Poythress, R. Bonnie, J. Monahan,
> R. Otto, & S. Hoge, *Adjudicative Competence: The MacArthur Studies* 103
> (2002) ("Within each domain of adjudicative competence (competence to
> assist counsel; decisional competence) the data indicate that understanding,

**MEMORANDUM DECISION AND ORDER - 13**

reasoning, and appreciation [of the charges against a defendant] are separable and somewhat independent aspects of functional legal ability"). *See also McKaskle*, 465 U.S., at 174, 104 S.Ct. 944 (describing trial tasks as including organization of defense, making motions, arguing points of law, participating in voir dire, questioning witnesses, and addressing the court and jury).

*Indiana v. Edwards*, 554 U.S. at 175–76.

## B.   *Idaho Court Determination of Claim*

After Petitioner was charged in this case, but before he asked to represent himself, he was found unable to assist in the defense of his case, and he was hospitalized in a mental health facility for approximately six weeks. (State's Lodging A-3, pp. 25-26.) He was then determined to be competent to stand trial, and his case began to proceed toward trial. During a status conference on June 9, 2011—four days ahead of a June 13, 2011, trial date that was scheduled to comply with the speedy trial requirement—Petitioner asked to represent himself. (*Id*., pp. 22-28.) The state district court declined his request, and Petitioner appealed the issue after trial.

To review the self-representation issue, the Idaho Court of Appeals examined what transpired at the June 9 hearing, where Petitioner made his request. The following colloquy occurred when the trial court sought to determine whether Petitioner and his counsel were prepared to go to trial in four days; by that time, Petitioner already would have been incarcerated for about a year:

**MEMORANDUM DECISION AND ORDER - 14**

[ESTEP]: [Private counsel] was going to try to get my funds from my estate to appoint me counsel. Let me find my notes. I was reading it, but I kind of nodded off there for a moment. But anyway, you were going to let me attempt to do an ex parte again. Probably no way you would let me defend myself, is there? Only a fool defends himself, and I am pretty stupid.

[COURT]: If you are going to defend yourself, we are going to have to have a colloquy after today, and I am not going to put you on the trial docket. I can get you on the trial docket fairly quickly.

[ESTEP]: That's up to you. I would prefer to defend myself. At this point--if I am wrong, you have got no witnesses. We have never met except in court. I had five different attorneys to handle my case in the preliminaries, starting with—

[COURT]: Most people only get one.

[ESTEP]: I know, but I used them all up. But at this point, I think if I could ex parte, maybe I could set my own defense up.

[COURT]: You keep saying ex parte. Are you saying you want to represent yourself in propria?

[ESTEP]: In propria.

. . . .

[ESTEP]: If I go with the current counsel, they have done nothing. So, I don't feel like I would be any worse represented by myself next Tuesday. And I have been in custody for a year. And this year--I prefer not to wait. If possible, sir, we could go ahead--I guess what I am asking, if I could represent myself and go ahead with the date of the 13th of June at 3:00. That's what I would prefer. But it's up to you.

(State's Lodging A-3, pp. 22-25.)

MEMORANDUM DECISION AND ORDER - 15

The state district court then asked Petitioner about his education level, whether he had any witnesses ready for trial on June 13, whether he had any experience picking a jury, whether he had been involuntarily held in a mental health facility, whether he had ever been diagnosed with a mental illness, whether he knew which elements the State had to prove on the rape charge, and what typical defenses to such a charge might be. Petitioner indicated that, although he wanted to present witnesses, he had none ready, he was a "novice" at picking a jury, and he hadn't done any investigatory work. Despite these admissions as to his unpreparedness and lack of legal ability, Petitioner concluded, quite unrealistically:

> All I can do is my best. If I fail at the – they say only a fool represents himself, and I know this. But I feel at this point if I fail, at least I went down—I can't blame anyone but me.
> . . . .
> I may not be able to do those [investigatory tasks], but all I can do is present the case the best I can, sir. I may not have all of the tools available to me, but what I do have I will use them the best I can.

(*Id*., pp. 25-27.)

After exploring Petitioner's ability to proceed to trial pro se, the trial court concluded, "The Court finds that you are not properly qualified to represent yourself." (*Id*., p. 28.) The Court also ordered that Petitioner undergo an additional psychological examination under I.C. § 18-210, a statute providing that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to

**MEMORANDUM DECISION AND ORDER - 16**

assist in his own defense shall be tried, convicted, sentenced or punished for the commission of an offense so long as such incapacity endures." (*Id*., pp. 29-30.) After considering all of the interests and issues, the state district court continued the trial, acknowledged Petitioner's objections to continuing with his current representation, and asked the public defender to help Petitioner look into hiring a different attorney. (*Id*., pp. 25-32.)

Relying on applicable United States Supreme Court precedent, the Idaho Court of Appeals concluded that Petitioner did not, in fact, make an unequivocal request to represent himself at the June 9 hearing, and that "the context preceding and following the request suggested that Estep was primarily interested in obtaining different counsel and considered proceeding pro se only if substitute counsel could not be obtained." (State's Lodging B-4, p. 5.) The Court of Appeals further concluded that Petitioner's "competence to stand trial, much less self-represent, was in question throughout the more than two years of pretrial proceedings."[1] (State's Lodging B-4, p. 5.)

---

[1]    During oral argument in the Idaho Court of Appeals, Petitioner clarified that his challenge was limited to "Judge Simpson's June 9, 2011, decision denying his initial request to proceed pro se." (State's Lodging B-4, p.4.) Nevertheless, the Court of Appeals analyzed all Petitioner's requests for self-representation in its written opinion.

**MEMORANDUM DECISION AND ORDER - 17**

Alternatively, the Idaho Court of Appeals concluded that, even if Petitioner's June 9 request was unequivocal, he "subsequently withdrew his request to self-represent." (State's Lodging B-4, p.5.) As explained by the court:

> Estep's appointed counsel filed a motion to withdraw and to allow Estep to proceed pro se with standby counsel on November 21, 2012, (after Judge Mitchell had replaced Judge Simpson). However, during a hearing on that motion, Estep's attorney informed the [trial] court that Estep no longer wanted to proceed pro se; instead, Estep wanted a different attorney. The district court denied that motion due to the proximity of the upcoming trial. Estep was present at the hearing and did not dispute counsel's retraction of the motion to proceed pro se with standby counsel. This not only withdrew Estep's immediate request to proceed pro se, but also waived any previous requests made up to that point, including the equivocal June 9 request.

(*Id.*)

The Idaho Court of Appeals also evaluated a "kite" requesting pro se representation that Petitioner submitted through jail staff on December 7, 2012, three days before trial. (State's Lodging B-4, p. 6 & A-1, p. 404.) The Court of Appeals found that, "[e]ven assuming that Estep's jail communication sufficed as a motion to proceed pro se, Estep abandoned that motion by not pursuing it further when afforded the opportunity to do so prior to the start of trial on December 10, 2012." (State's Lodging B-4, p. 7.) The Court of Appeals determined that the record reflected that, "instead of pursuing his request to proceed pro se, Estep endorsed the abilities of his attorney to adequately present his defense, even in his absence." (*Id.*)

**MEMORANDUM DECISION AND ORDER - 18**

C. *Discussion*

Based on the entire record before the Court, Petitioner has not shown that the Idaho Court of Appeals' factual findings were unreasonable. The record is clear that Petitioner was subject to a court-ordered guardianship supervision for management of his funds and assets at that time, that he had experienced serious mental health issues, that the status of his ability to even assist in his defense (let alone conduct the defense himself) was questionable before and after June 9, that he had no plan on how he would have defended himself, and that he was facing up to life imprisonment. Based on all these factors, the factual findings of the state courts that Petitioner was not capable of adequately representing himself at a trial that was to be held four days from date of the hearing are not unreasonable but well-supported by the record.

The Idaho Court of Appeals reached an objectively reasonable conclusion on the self-representation question, and this Court agrees that the Idaho Court of Appeals' decision is in harmony with federal precedent, especially the more recent cases that permit trial courts to taken into consideration more than simply a defendant's mental health, such as the procedural posture of the case. Here, the trial court's decision did not turn on only the question of Petitioner's competence to stand trial, but also on whether Petitioner could have been ready for trial within four days, because of Petitioner insistence on enforcing speedy trial limits. Petitioner has not convinced the Court that all

**MEMORANDUM DECISION AND ORDER - 19**

fairminded jurists would conclude that the state courts violated Petitioner's right of self-representation under the particular circumstances present in this case. Accordingly, federal habeas corpus relief on this claim will be denied.

### 3.    Claim 2: Excessive Sentence

Petitioner's second claim is that his fixed life sentence violates the Sixth Amendment right to due process. He argues that the sentence is beyond that permitted by the rape statute, Idaho Code §18-6104, which prescribes only a "life" sentence as the maximum allowable sentence, not "fixed life," which he asserts is "greater than life." (Dkt. 3, p. 7.) Petitioner also argues that fixed life is appropriate only for forcible rape cases, not a non-forcible rape instance.

### A.  *Procedural Assessment*

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim. If there are

**MEMORANDUM DECISION AND ORDER - 20**

no state court avenues for relief left open to a petition, the claim is considered "procedurally defaulted" for federal habeas corpus purposes.

Respondent argues that Petitioner asserted only state-law grounds for this claim on direct appeal, and thus the claim is procedurally defaulted. The Court finds Respondent's procedural default argument consistent with the state court record. (State's Lodgings B-1 to B-5.) Nevertheless, the United States Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518 (1997); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"); *see also* 28 U.S.C. § 2254(b)(2).

**B.  *Merits Assessment***

Petitioner was sentenced to a term within the statutory limits for the crime, and thus there is no Sixth Amendment due process violation. *See* Idaho Code § 18-6104 ("Rape is punishable by imprisonment in the state prison not less than one (1) year, and the imprisonment may be extended to life in the discretion of the District Judge, who shall pass sentence."). There is no United States Supreme Court precedent upon which Petitioner can base his argument that a "fixed life" sentence is not a "life sentence."

**MEMORANDUM DECISION AND ORDER - 21**

Relief cannot be granted under § 2254(d) unless there is a United States Supreme Court case on point.

In addition, United States Supreme Court precedent governing disproportionate sentences does not support Petitioner's claim. Petitioner had a prior conviction for fondling a developmentally disabled girl. Here, he provided alcohol to an 18-year-old (a crime in itself), and then he had sex with her when she was unable to consent. Her testimony reflected that she had previously told Petitioner (who had lied and said he was 41 years old, when he was 53) that she did not want to date him, but considered him only a friend. This set of facts makes Petitioner's conduct far worse than the "date" rape he asserts he should be punished for (Dkt. 3, p. 7), because he was on notice that the victim did not want to "date" him, let alone have sex with him. Clearly, he is a danger to young females.

At the time the Idaho Court of Appeals rendered its opinion in 2014, precedent from the United States Supreme Court existed which cuts against Petitioner's argument of an unconstitutionally excessive sentence. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (affirming a Michigan court judgment sentencing the defendant to a statutory mandatory life sentence without the possibility of parole for possessing more than 650 grams of cocaine); *Lockyer v. Andrade*, 538 U.S. 63 (2003) (two consecutive sentences of 25 years to life in prison for a "third strike" provision of state law for stealing $150 worth

**MEMORANDUM DECISION AND ORDER - 22**

of videotapes did not warrant habeas corpus relief); *Ewing v. California*, 538 U.S. 11 (2003) (same).

The United States Supreme Court has never held that a mental impairment warrants a lesser sentence, except as it concerns death sentences,[2] and this Court is not permitted to extend capital punishment cases to an entirely different factual circumstance, as here.[3] Because Petitioner's sentence is not contrary to United States Supreme Court precedent under any federal theory, he is not entitled to relief under § 2254.

## 4.    Conclusion

Neither of Petitioner's claims warrants relief on the merits. The Petition will be denied and dismissed with prejudice. Because the Court concludes that the issues presented are not "adequate to deserve encouragement to proceed further," *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), a certificate of appealability will not be granted.

---

[2]      *See Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that execution of mentally retarded individuals is "cruel and unusual punishment"); *Hall v. Florida*, 134 S.Ct. 1986 (2014) (Florida rule limiting capital defendant's ability to show intellectual disability violated Eighth Amendment).

[3]      *See, e.g., Joshua v. Adams*, 231 Fed. Appx. 592 (9th Cir. 2007) (unpublished) ("Absent a Supreme Court decision clearly establishing that mental illness renders a non-capital sentence unconstitutional, we are unable to grant Joshua habeas relief," in a case where a schizophrenic defendant received a sentence of 25 years to life for stealing two bottles of alcohol, under a three strikes law).

**MEMORANDUM DECISION AND ORDER - 23**

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion for Evidentiary Hearing (Dkt. 16) is DENIED.

2. Petitioner's Motion for a Rule 35 Mental Examination (Dkt. 20) is DENIED.

3. Petitioner's Motion and Petition for Scheduling a Date for a Hearing (Dkt. 21) is DENIED.

4. Petitioner's Motion for Review (Dkt. 21) is GRANTED to the extent that his Petition is now adjudicated.

5. Petitioner's Motion for Judicial Status Conference (Dkt. 27) is DENIED as unnecessary.

6. The Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED and DISMISSED with prejudice.

7. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

**MEMORANDUM DECISION AND ORDER - 24**

DATED: March 23, 2017



_____

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 25**